THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
NO. 2:08-CV-009-FL

JAMES E. BURNETTE,                          )
                                            )
    Plaintiff/Claimant,                     )
                                            )
            v.                              )       **MEMORANDUM AND**
                                            )       **RECOMMENDATION**
MICHAEL J. ASTRUE, Commissioner             )
of Social Security,                         )
                                            )
    Defendant.                              )

This matter is before the Court on the parties' cross motions for judgment on the
pleadings pursuant to FED. R. CIV. P. 12(c). Claimant James E. Burnette ("Claimant") filed this
action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his
applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental
Security Income ("SSI") payments. The time for filing responsive briefs has expired and the
pending motions are ripe for adjudication. Having carefully reviewed the administrative record
and the motions and memoranda submitted by the parties, this Court recommends denying
Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on
the Pleadings and upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant filed an application for DIB and SSI payments on 19 November 2003, alleging
disability beginning 15 May 1996. (R. 62-64). Both claims were denied initially and upon
reconsideration. (R. 30, 32-36, 39-40). A hearing before the Administrative Law Judge ("ALJ")
was held on 2 November 2005, at which Claimant was represented by counsel and a vocational
expert ("VE") appeared and testified. (R. 236-52). On 31 March 2006, the ALJ issued a

decision denying Claimant's claims. (R. 17-28). On 22 February 2008, the Appeals Council denied Claimant's request for review. (R. 8-11). Claimant then filed a complaint in this Court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

In its consideration of the final agency determination, this Court must remain mindful of the standard by which it reviews the administrative decision. *See e.g., Evans* v. *Eaton Corp. Long Term Disability Plan,* 514 F.3d 315, 320-21 (4th Cir. 2008*)* (citations omitted) (explaining standards of review are an expression of judicial restraint safeguarding the "superior vantage points of those entrusted with primary decisional responsibility."). The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner...as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood,* 487 U.S. 552, 565 (1988), it is "more than a mere scintilla...and somewhat less than a preponderance." *Laws,* 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel,* 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in

2

conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform past work or (5) any other work.

*Albright v. Commissioner of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3); 416.920a(c)(3). The ALJ is required to incorporate pertinent

3

findings and conclusions based on the technique into his written decision. *Id.* §§ 404.1520a(e)(2); 416.920a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) failure to give controlling weight to the opinion of Claimant's treating physician; (2) failure to consider relevant evidence; (3) improper assessment of Claimant's residual functional capacity ("RFC"); and (4) failure to resolve conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). Pl.'s Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings at 4. ("Pl.'s Mem.").

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 27). Next, the ALJ determined Claimant had the following combination of severe impairments: (1) alcoholism and (2) depressive disorder. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* In reviewing Claimant's alleged mental impairment and applying the technique prescribed by the regulations, the ALJ found as follows:

The [C]laimant has the following mental limitations set forth in "Part B" of the mental listings: moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence or pace. He has exhibited one or two episodes of decompensation.

(R. 24).

4

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with occasional limitations in climbing, balancing and stooping. (R. 27). The ALJ found further that Claimant could perform simple, routine, repetitive tasks and maintain attention and concentration for more than two hours, "but may require allowances for some problems with social interaction and adaptive functioning." *Id.* In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 24-25, 27). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work. (R. 27). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy, such as custodian/janitor, construction flagger and food preparation worker. (R. 28).

## II.    Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 46 years old, unemployed and residing with his uncle. (R. 240-41, 245). Claimant attained a ninth grade education. (R. 240). Claimant was last employed as a painter's assistant for approximately six months. (R. 241-42). Claimant's past work experience also includes sanding and cleaning cars for a body shop. (R. 242).

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

5

Claimant testified that he has bipolar disorder and has seen a psychiatrist for the past ten years. (R. 244, 248). At present, Claimant has monthly appointments at a mental health center. (R. 248). Symptoms associated with this disorder include feelings of worthlessness, concentration difficulties, sleep difficulties and suicidal thoughts. (R. 244, 248). Claimant explained he cannot afford medication and relies instead on the free samples supplied by the mental health clinic, which help "a little bit." (R. 244). Claimant testified to alcohol dependence but stated that he no longer drinks. (R. 246-47). Yet, Claimant admitted to drinking the previous month on two separate occasions, one of which occurred three days prior to the administrative hearing. (R. 247).

As for daily activities, Claimant spends his days sitting and "star[ing] at the wall," walking, playing cards with his uncle or riding in the car. (R. 245). Claimant fishes three to four times a week. *Id.* Claimant explained that due to his desire to be alone, he no longer attends church. (R. 245, 246).

## III. Vocational Expert's Testimony at the Administrative Hearing

Barry Hensely, Ed. D., testified as a VE at the administrative hearing. (R. 59-61, 249-51). After the VE's testimony regarding Claimant's past work experience (R. 249), the ALJ posed the following hypothetical:

Assume a hypothetical person the same age, education, and work history as Mr. Burnette, and given the limitation of such that he could lift 20 pounds on an occasional basis and 10 pounds on a frequent basis. He can stand and walk about six hours in an eight hour day, as well as sit about six hours in an eight hour day. He is restricted to only occasional climb[ing], balanc[ing], and stoop[ing]. He is limited to various mental impairments. He is estimated to be approximately between the low end or borderline of job range, and extremely low range of intelligence, and we have testimony that he has a poor, short and fairly poor long-term memory, and fair to poor sustained concentration and attention. A fair ability to understand and follow simple instructions, and a poor ability to

6

understand and follow complex instructions. He would be able to remember a simple routine task, and able to maintain attention and concentration. He may have some problems with some of the social interaction (sic) especially accepting criticism, and may have some problems with adaptive functioning. Given those limitations, are there any jobs that exist in significant numbers in the national economy?

(R. 250). The VE responded the individual could perform the following unskilled, entry-level positions at the light level: (1) custodial work - 4,500 jobs locally, 250,000 jobs nationally; (2) construction flagger - 1,300 locally, 80,000 nationally; and (3) food preparation - 3,300 locally, 169,000 nationally. (R. 251). The VE testified further that the above jobs were representative only. *Id.*

## DISCUSSION

## I.     The ALJ did not err in evaluating the opinion of Claimant's treating psychiatrist.

Claimant contends the ALJ should have accorded controlling weight to the opinion of Claimant's treating psychiatrist, Esther Lyons, D.O. Pl.'s Mem. at 5-7.

The opinion of a treating physician is generally entitled to great weight. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (per curiam). The underlying rationale is that the opinion of a treating physician "reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Id.* However, appropriate support in the record must warrant deference to the treating physician's opinion. In particular, a treating physician's opinion on the nature and severity of the claimed impairment is accorded controlling weight only when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be

7

accorded significantly less weight." *Craig*, 76 F.3d at 590; *see also Mastro v. Apfel*, 270 F.3d 171,178 (4th Cir. 2001) (citation omitted) (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence"). In fact, an ALJ "may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source...if he sufficiently explains his rationale and if the record supports his findings." *Wireman v. Barnhart*, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006). The regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinions, and their consistency with the record. 20 C.F.R. § 404.1527(d)(2)-(6); *see also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005).

The medical opinion at issue appeared in a questionnaire dated 17 May 2005, wherein Dr. Lyons indicated Claimant suffers from marked and extreme limitations in functioning. (R. 25 ¶3, 232-33). While acknowledging Dr. Lyons' treatment of Claimant since March 2004, the ALJ afforded "little weight" to Dr. Lyons' opinion because it (1) contrasted with her statements that Claimant "experiences decreased anxiety and decreased depression" and (2) "indicates that [Dr. Lyons]...relied more on...[C]laimant's allegations,...found to be not fully credible,...than on [Dr. Lyons'] own objective findings." (R. 25, 224).

Substantial evidence supports the ALJ's decision to discount Dr. Lyons' opinion. During her initial assessment of Claimant in March 2004, Dr. Lyons assigned Claimant a Global Assessment of Functioning ("GAF")[2] score of 40 and found that Claimant's concentration,

---

[2] The GAF scale ranges from zero to one-hundred and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), 32 (4th ed. 1994). A GAF score of 31 to 40 reflects "[s]ome impairment in reality testing or communication...[or] major impairment in several

8

judgment and insight were poor, his mood depressed and his "[f]und of knowledge" in the "somewhat low average" range.[3] (R. 201). However, Dr. Lyons noted further that Claimant's speech was "of a normal quantity and quality," his memory was intact, he was able to abstract similarities, his thoughts were coherent, he answered questions in a goal-directed manner and he was alert and oriented. (R. 201). During a July 2004 follow-up, Dr. Lyons indicated that Claimant attributed his increased sleep, decreased anxiety and "much decrease in depression" to the medications prescribed by Dr. Lyons in March. (R. 25, 224). Similarly, in September 2004, Claimant reported to Dr. Lyons that he was doing well and that he had improved. (R. 223). Dr. Lyons described Claimant's mood as level and noted his affect was mildly constricted and his thoughts were coherent and organized. *Id.* Accordingly, the ALJ's finding that Dr. Lyons' treatment notes do not support her May 2005 opinion is supported by substantial evidence.[4]

The Court notes also that Dr. Lyons' May 2005 opinion is inconsistent with other evidence of record, in addition to her own treatment notes. For example, during a June 2004 follow-up at the mental health clinic, Claimant reported that he was satisfied with the results of his medication. (R. 23, 194). In August 2004, a nurse noted Claimant appeared stable on current medications and indicated that Claimant attributed his increased sleep, decreased anxiety and decreased depression to his medications and denied all side effects. (R. 23, 192). Furthermore,

---

areas, such as work or school, family relations, judgment, thinking, or mood...." DSM-IV at 32 (bold typeface omitted).

[3] A duplicate copy of the March 2004 assessment appears in the administrative record at pages 225-26.

[4] Claimant faults the ALJ for stating that Dr. Lyons' opinion indicates a greater reliance on Claimant's allegations than on Dr. Lyons' own objective findings. Pl.'s Mem. at 5. However, given Dr. Lyons' contradictory findings, the ALJ's statement is a logical one.

9

Elizabeth Anton, Psy.D., a Disability Determination Service ("DDS") state agency psychological non-examining consultant, found Claimant was "moderately limited" in maintaining social functioning. (R. 25, 168, 172-73). While Claimant implies that the opinion of Dr. Anton should be accorded little weight given she is a non-treating, non-examining physician, "[f]indings of fact made by State agency...consultants...regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the [ALJ] and Appeals Council levels of administrative review." S.S.R. 96-6p, 1996 WL 374180, at *1. The ALJ found, and the record supports, that the opinions of the DDS medical experts, including Dr. Anton, are consistent with the evidence of record and thus accorded these opinions "great weight." (R. 25). Dr. Anton's report reflects a fair and complete assessment of Claimant's then-current health status based on Claimant's history and subjective complaints, including the April 2004 findings by Dana Blackmer, Ph.D., a DDS examining consultant. (R. 170). Furthermore, Dr. Anton's findings were affirmed on October 2004 by Arlene Cooke, Ph.D., another DDS non-examining consultant, whose evaluation included a summary of the June and August 2004 mental health notes discussed above. (R. 221).

Despite Claimant's allegation to the contrary, the ALJ considered the 20 C.F.R. § 404.1527(d) factors which ultimately convinced the ALJ to accord decreased weight to Dr. Lyons' opinion. Pl.'s Mem. at 6. In particular, the absence of a sufficient rationale for the opinion and the inconsistency between the opinion and other medical evidence in the record reasonably downgraded the true evidentiary value of Dr. Lyons' opinion. Additionally, the ALJ complied with S.S.R. 96-2p by making his decision sufficiently specific for subsequent viewers to understand the weight accorded Dr. Lyons' opinion and the reasons for said weight. *See*

10

*Koonce v. Apfel*, 166 F.3d 1209, 1999 WL 7864, at *2 (4th Cir. 1999) ("An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion.") (internal citations and quotations omitted). Accordingly, the ALJ was within his discretion in not giving controlling weight to Dr. Lyons' opinion.

## II. The ALJ considered all relevant evidence.

Claimant alleges that the ALJ failed to consider all relevant evidence and in particular, the consultative examination by Dr. Blackmer. Pl.'s Mem. at 7-8. This Court disagrees.

The regulations require the ALJ to consider all evidence in the record when making a disability determination. *See* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3). However, the ALJ is not required to discuss all evidence in the record. *See e.g., Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining there "is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"); *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999) (ALJ need not discuss every piece of evidence in making credibility determination); *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) (noting "a written evaluation of every piece of testimony and submitted evidence is not required"). Rather, the ALJ must "provide [this Court] with sufficient reasoning for determining that the proper legal analysis has been conducted." *Keeton v. Dept. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *see also Coffman*, 829 F.2d at 517.

Here, the ALJ's summary of Claimant's medical record "enable[s]...[this Court] to conclude that [the ALJ] considered [his] medical condition as a whole," *see Dyer*, 395 F.3d at

11

1211, including findings by Dr. Blackmer. First, as stated above, the ALJ accorded "great weight" to the opinions of the DDS medical experts. (R. 25). Secondly, the ALJ relied on the VE's testimony, which was given in response to a hypothetical incorporating Dr. Blackmer's findings. In particular, the ALJ asked the VE to assume a hypothetical person

> between the *low end or borderline of job range, and extremely low range of*
> *intelligence*, [with] a *poor, short and fairly poor long-term memory*, [a] *fair to*
> *poor sustained concentration and attention*[,] [a] *fair ability to understand and*
> *follow simple instructions*, and a *poor ability to understand and follow complex*
> *instructions*.

(R. 250) (emphasis added). The above assumptions are identical in substance to Dr. Blackmer's findings that Claimant (1) "seems to function[] in the low end [or] the borderline to the upper end of the extremely low range of intelligence;" (2) has "poor short- and fair to poor long-term memory;" (3) "fair to poor sustained concentration and attention;" (4) "fair ability to understand and follow through with simple instructions;" and (5) "poor ability to understand and follow through with complex instructions." (R. 157). Finally, the ALJ's RFC incorporates the findings of Dr. Anton, whose report, as explained above, includes a summary of Dr. Blackmer's findings. (R. 170). For the foregoing reasons, Claimant's argument as to this issue is without merit.

## III.   The ALJ's RFC assessment is supported by substantial evidence.

Claimant contends the ALJ failed to accurately describe Claimant's RFC. Pl.'s Mem. at 4-5, 8-9. In particular, Claimant avers the ALJ (1) failed to express Claimant's attention and concentration limitations in maximum terms, (2) improperly included limitations for impairments never alleged by Claimant and (3) failed to express Claimant's mental RFC finding in accordance with S.S.R. 96-8p. *Id.*

12

*a.     The ALJ's failure to express Claimant's mental RFC in terms of her maximum functional ability constitutes harmless error.*

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. S.S.R. 96-8p, 1996 WL 374184, at *1; *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). That is, the RFC represents the most an individual can do despite his limitations or restrictions - not the least. *See* S.S.R. 96-8p, 1996 WL 374184, at *1. Here, the ALJ did not express Claimant's concentration limitation in terms of his maximum ability and instead found Claimant can "maintain attention and concentration *for more than 2 hours* in an 8-hour work day."[5] (R. 27) (emphasis added). However, any error is harmless given the VE determined jobs exist that Claimant can perform, despite the mental limitations, *described in maximum terms*, stated in the ALJ's hypothetical question to the VE and described above. (R. 26, 250). As explained above, the hypothetical incorporated specifically the findings of Dr. Blackmer (R. 155-57), whose findings were relied upon by Dr. Anton in determining Claimant's mental RFC. (R. 170).

However, Claimant opines that the RFC provided in the ALJ's decision conflicts with the mental limitations posed to the VE. Pl.'s Mem. at 8. To the contrary, the ALJ merely elaborated upon Claimant's mental limitations as determined by DDS medical experts, which ensured the

---

[5]     The RFC provided by the ALJ mirrors Dr. Anton's findings. (R. 25). In particular, Dr. Anton found that Claimant is capable of remembering simple, routine tasks and of *maintaining attention and concentration for more than 2 hours in an 8-hour workday* but may have problems with social interaction and adaptive functioning. (R. 174) (emphasis added). In according the opinions of the DDS medical experts "great weight," including Dr. Anton's opinion, the ALJ found Claimant could "perform simple routine repetitive tasks, and maintain attention and concentration for more than 2 hours in an 8-hour work day, but may require allowances for some problems with social interaction and adaptive functioning." (R. 27).

13

VE's understanding of the extent of Claimant's mental impairment on work-related functions. In fact, prior to answering whether jobs existed that Claimant could perform, the VE noted that the mental limitations described an individual who can perform basically simple, repetitive one to three step tasks and work activities. (R. 250). The Court notes further that Claimant's counsel was present at the administrative hearing and did not challenge the ALJ's hypothetical or the VE's summary thereof. (R. 251). Considering the evidence in totality, the ALJ's finding that Claimant is capable of sustaining concentration required to perform full-time work is supported by substantial evidence.

*b.    The ALJ's inclusion of physical limitations in Claimant's RFC was proper.*

Claimant faults the ALJ for including "limitations for non-existent physical impairments." Pl.'s Mem. at 5. As an initial matter, the Court notes that the inclusion of physical limitations in Claimant's RFC clearly benefits Claimant as such a finding necessarily limits Claimant's employment opportunities and thereby increases his chances of being found disabled. Accordingly, even if the ALJ erred in finding that Claimant suffered from "non-existent" physical impairments, this error would not negatively impact the ALJ's decision.

An individual's RFC is "based on all of the relevant evidence in the case record, including...any 'medical source statements' - i.e., opinions about what the individual can still do despite his impairment(s) - submitted by an individual's treating source or other acceptable medical sources." S.S.R. 96-8p, 1996 WL 374184, at *2. Here, Frank Virgili, M.D., a DDS non-examining consultant, completed a physical RFC assessment dated 11 June 2004 and found Claimant capable of performing light work, sitting, standing and/or walking 6 hours in an 8-hour workday and occasionally climbing, balancing and stooping - limitations adopted by the ALJ.

14

(R. 27, 182-89). In making this assessment, Dr. Virgili relied on medical records indicating a history of low back pain, mild hand tremor and an elevated liver function, as well as the 13 April 2004 findings by Johnson Draughon, Jr., M.D., a DDS examining consultant. (R. 151, 189). Accordingly, Claimant's argument as to this issue is without merit.

c.    *The ALJ properly expressed Claimant's mental RFC finding in accordance with S.S.R. 96-8p.*

Claimant contends the ALJ failed to perform a function-by-function analysis of Claimant's ability to perform work-related mental activities, as mandated by Social Security Ruling 96-8p. Pl.'s Mem. at 9. Moreover, Claimant states the terms "allowances" and "adaptive functioning," both of which appear in the ALJ's RFC assessment, "were not defined and are not generally used when describing work-related functions." *Id.* Accordingly, Claimant contends "[w]ithout a clear meaning of those terms, the RFC is incomplete." *Id.*

S.S.R. 96-8p provides that the "RFC assessment must first identify the individual's functional limitations or restrictions and assess his...work-related abilities on a function-by-function basis." S.S.R. 96-8p, 1996 WL 374184, at *1; *see also* 20 C.F.R. §§ 404.1545 (b)-(d), 416.945 (b)-(d). The ALJ expressed limitations resulting from Claimant's mental impairment in terms of "work-related abilities" in accordance with S.S.R. 96-8p. "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." S.S.R. 96-8p, 1996 WL 374184, at *6. In other words, a claimant must be capable of performing unskilled work. *See* S.S.R. 96-9p, 1996

15

WL 374185, at *9 (July 2, 1996) (listing the above mental activities as "generally required by unskilled work").

Here, the ALJ found that Claimant could perform simple, routine, repetitive tasks and maintain attention and concentration but "may require allowances for some problems with social interaction and adaptive functioning." (R. 25). Moreover, in according "great weight" to the opinion of DDS medical experts, the ALJ adopted the function-by-function assessment made Dr. Anton and subsequently affirmed by Dr. Cooke. (R. 25, 172-73, 221). In particular, Dr. Anton completed a mental RFC assessment, which included evaluating Claimant's mental abilities with respect to twenty work-related functions. (R. 172-75). Further, as discussed above, Dr. Anton's opinion is well-supported by and consistent with the record and in accordance with the regulations and rulings. *See* 20 C.F.R. §§ 404.1527(f), 416.927(f); *see generally* S.S.R. 96-6p, 1996 WL 374180 (July 2, 1996).

Finally, the Court finds Claimant's argument that the ALJ's RFC is incomplete due to the use of the terms "allowances" and "adaptive functioning" unpersuasive. In conveying Claimant's limitations to the VE, the ALJ noted that Claimant "may have some problems with some of the social interaction (sic) especially accepting criticism, and may have some problems with adaptive functioning." (R. 250). In order for the opinion of a VE to be helpful, it must be "in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). As explained above, the hypothetical presented to the VE adequately reflected the Claimant's RFC for which the ALJ had sufficient evidence. In particular, these limitations are identical to those found by Dr. Anton, who noted Claimant "may have some problems with social interaction, especially accepting criticism" and

16

"may have problems with adaptive functioning." (R. 174). Dr. Anton's functional capacity assessment is based on her evaluation of twenty work-related mental activities, including nine functions grouped under the headings of "social interaction" and "adaptation." *Id.* In evaluating Claimant's functions under said headings, Dr. Anton noted that Claimant is "moderately limited" in his ability "to accept instructions and respond appropriately to criticism from supervisors" and "to respond appropriately to changes in the work setting." (R. 173). Moreover, the VE's understanding of the ALJ's RFC finding was evidenced by his statement that the ALJ was describing an individual "who can perform basically simple, repetitive one to three step tasks and work activities." (R. 250).

The ALJ's opinion demonstrates a thorough review of Claimant's medical history and a detailed account of Claimant's claims concerning his impairments. The ALJ's RFC determination finds accord with the opinions of state agency examining physicians (R. 157, 172-74, 182-89, 221). Finally, in compliance with S.S.R. 96-8p and as discussed in detail above, the ALJ discussed his resolution of the opinion by Claimant's treating physician and its lack of support and inconsistency with the medical evidence as a whole. (R. 25, 232-33).

Based on the foregoing, this Court finds that the ALJ's RFC determination is supported by substantial evidence. The ALJ analyzed all of the relevant evidence, sufficiently explained his findings and his rationale in crediting the evidence and applied the correct legal standards in evaluating Claimant's RFC. Accordingly, Claimant's argument as to this issue is without merit.

**IV.    The ALJ did not fail to identify and resolve conflicts between the VE's testimony and the DOT.**

Lastly, Claimant contends the ALJ failed to identify and resolve conflicts between the VE's testimony and the DOT as required in Social Security Ruling 00-4p. *See* Pl.'s Mem. at 9.

17

Specifically, Claimant contends the positions identified by the VE require either a skill or exertion level exceeding Claimant's RFC.

While the ALJ may meet his burden under step five of the evaluation process by calling a vocational expert to testify, 20 C.F.R. §§ 404.1566, 416.966, the VE's testimony generally should be consistent with the DOT. S.S.R. 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). As such, the ALJ is required to ask the VE whether any possible conflict exi sts between his testimony and the DOT, and, if the testimony appears to conflict with the DOT, to "elicit a reasonable explanation for the apparent conflict." *Id.* at *4; *see also Oxendine v. Halter*, 181 F. Supp. 2d 570, 574 (E.D.N.C. 2001) ("[B]efore an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his...testimony as to the exertional requirement of identified jobs corresponds with the [DOT], and elicit a reasonable explanation for any discrepancy on this point.") (citation omitted). Here, the ALJ asked whether the VE's testimony conflicted with the DOT, to which the VE responded in the negative. (R. 251). Accordingly, the ALJ attempted to identify any conflict between the VE's testimony and the information contained in the DOT in conformance with the mandate of S.S.R. 00-4p. Claimant, however, asserts a conflict did exist in that (1) the janitorial and construction flagger positions listed by the VE required a reasoning level of 2 or more and (2) the janitorial position required medium exertion. Pl.'s Mem. at 9-10. Also, Claimant faults the VE for not listing a specific occupation within the food preparation division and for failing to provide DOT occupational codes. *Id.* at 11.

The Court addresses first Claimant's contention that a reasoning level of 2 is "not consistent with simple tasks." *Id.* at 10. The DOT specifies the General Educational

18

Development[6] ("GED") requirements required for each job, including the level of reasoning skills. A job rated at a reasoning level of 1 requires the ability to "[a]pply commonsense understanding to carry out simple one- or two-ste p instructions," whereas a job rated at a reasoning level of 2 requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." DOT, App. C § III, 1991 WL 688702. A reasoning level of 3 is defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form." *Id.* Claimant equates the limitation to "simple, repetitive and routine tasks" found by the ALJ to simple, one- and two-step instructions of reasoning level 1, but cites no authority compelling this result. Pl.'s Mem. at 10. Claimant contends therefore that the ALJ was required to resolve the conflict between the VE's testimony that a claimant limited to simple, routine and repetitive tasks could perform certain jobs classified by the DOT at reasoning level 2. *Id.*

In *Meissl v. Barnhart*, the court addressed whether a person limited to work involving simple and repetitive tasks could perform a job with a reasoning level of 2. 403 F. Supp. 2d 981, 984 (C.D. Cal. 2005). The court reasoned:

[t]he Social Security regulations separate a claimant's ability to understand and remember things and to concentrate into just two categories: "short and simple instructions" and "detailed" or "complex" instructions. 20 C.F.R. § 416.969a(c)(1) (iii); *see also* 20 C.F.R. part 404, subpart P, Appendix 1, Listing 12.00(C)(3) ("You may be able to sustain attention and persist at simple tasks but may still have difficulty with complicated tasks"). The DOT, on the other hand, employs a much more graduated, measured and finely tuned scale starting from the most mundane ("simple one-or two-step instructions" at level one), moving up to the most complex ("applying principles of logical or scientific thinking . . . apprehend

---

[6] "General Educational Development embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." DOT, App. C § III, 1991 WL 688702.

19

the most abstruse classes of concepts" at level six). To equate the Social Security regulations use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are all encapsulated within the regulations' use of the word "detail." Such a "blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity. Even more problematic for [claimant's] position is that she ignores the qualifier the DOT places on the term "detailed" as also being "uninvolved." This qualifier certainly calls into question any attempt to equate the Social Security regulations' use of the term "detailed" with the DOT's use of that term in the reasoning levels. Instead of simply seeking to equate the two scales based on the serendipity that they happen to employ the same word choice, a much more careful analysis is required in comparing the claimant's RFC with the DOT's reasoning scale.

*Meissl*, 403 F. Supp. 2d at 984. The court then determined that the claimant's reasoning level was at a level 2, rather than a 1. *Id.* (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (holding that "level-two reasoning appears more consistent with plaintiff's RFC" to "simple and routine tasks")); *see Money v. Barnhart*, 91 Fed. Appx. 210, 214, 2004 WL 362291, at *3 (3d Cir. 2004) ("Working at reasoning level 2 would not contradict the mandate that [claimant's] work be simple, routine and repetitive"); *see also West v. Astrue*, 2008 WL 2024963, at *7 (M.D. Ga. May 8, 2008); *Riggs v. Astrue*, 2008 WL 1927337, at *15 (W.D. Wash. Apr. 25, 2008) (citations omitted); *Miller v. Astrue*, 2008 WL 759083, at *2 (S.D. W. Va. Mar. 19, 2008) (citations omitted). The *Meissl* court determined further that the ALJ's limitation of claimant to performing simple, routine and repetitive tasks did not conflict with the DOT's level 2 reasoning requirement. *Meissl*, 403 F. Supp. 2d at 984-85.

This Court finds the rationale applied by the court in *Meissl* convincing, and for the same reasons, holds that the RFC to perform simple, routine and repetitive tasks is consistent with a reasoning level of 2. Accordingly, the ALJ was not required under S.S.R. 00-4p to elicit a "reasonable explanation" from the VE as to the positions containing a reasoning level of 2. *See*

20

*West*, 2008 WL 2024963, at *8. Therefore, the ALJ properly found that Claimant was capable of working as a construction flagger - a job classified as light in exertion and requiring a reasoning level of 2. *See* U.S. Dep't of Labor, Employment & Training Admin., Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles § 05.12.20, 372.667-022 (Flagger) (1993).

Claimant alleges also that the ALJ's RFC finding does not permit Claimant to perform custodial work. Pl.'s Mem. at 10. In particular, Claimant contends "there is no janitor/custodian position listed in the DOT at the light level." *Id.* at 10. Finally, Claimant faults the VE for failing to identify occupations within the division of food preparation. *Id.* at 11. As the VE did not provide DOT codes for these positions, this Court is unable to conclude whether the custodial and food preparation positions envisioned by the VE conflict with the DOT. However, this Court need not address whether error was committed. Here, even if this Court were to determine that the ALJ erred in this respect, such error would be harmless considering the ALJ relied appropriately upon the VE's testimony regarding the construction flagger position. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating a claimant's pain because "he would have reached the same result notwithstanding his initial error"). As the VE identified a *representative* position existing in significant numbers that Claimant can perform, the VE's testimony thus provided substantial evidence for the ALJ's decision that Claimant can perform alternate work. *See Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (noting that as few as 110 jobs constitute a significant number within the economy for purposes of satisfying step five under the sequential evaluation analysis). Therefore, the testimony of the VE regarding the job of construction

21

flagger constitutes substantial evidence to support the ALJ's finding that a significant number of jobs exist in the regional economy which Claimant could perform. *See Prunty v. Barnhart*, 2005 U.S. Dist. LEXIS 16594, 2005 WL 1926611, at *3 (W.D. Va. Aug. 9, 2005) (finding VE's testimony that claimant could perform the job identified in a single DOT category as sufficient to meet ALJ's step-five burden); *see also* S.S.R. 00-4p, 2000 WL 1898704, at *2 (explaining occupations listed in the DOT are "collective" descriptions of occupations and "[e]ach occupation represents numerous jobs").

## CONCLUSION

For the reasons stated above, this Court RECOMMENDS Claimant's Motion for Judgment on the Pleadings be DENIED, Defendant's Motion for Judgment on the Pleadings be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 2nd day December, 2008.

Robert B. Jones, Jr.
United States Magistrate Judge